# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 10-305


RONALD BABIN

VERSUS

**ERNEST P. BREAUX ELECTRICAL, INC.**


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - NUMBER 4
PARISH OF LAFAYETTE, NO. 0801898
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion Judges.


**AFFIRMED.**


**Terrel A. Thomas**
**Johnson, Stiltner & Rahman**
**P. O. Box 98001**
**Baton Rouge, LA 70898-8001**
**(225) 231-0815**
**Counsel for Defendant/Appellee:**
**Ernest P. Breaux Electrical**

**Jennifer K. Barber**
**The Barber Law Firm**
**P. O. Box 1909**
**Sulphur, LA 70664**
**(337) 527-4633**
**Counsel for Plaintiff/Appellant:**
**Ronald Babin**

**EZELL, JUDGE .**

Ronald Babin appeals the decision of the workers' compensation judge finding that he forfeited his right to workers' compensation benefits pursuant to La.R.S. 23:1208.1. For the following reasons, we affirm the decision of the workers' compensation judge.

Mr. Babin was injured on January 29, 2008, while in the course and scope of his employment with Ernest Breaux Electrical (EBE). Mr. Babin was suspended above the ground in the bucket of a truck, working on an electrical transformer when the bucket lift malfunctioned, crushing the bucket into the transformer for several minutes. Mr. Babin was forced to ball up in the bottom of the bucket to prevent himself from being crushed. As a result, Mr. Babin suffered an aggravation of a prior L5-S1 disc injury. When Mr. Babin filed the present workers' compensation claim, EBE discovered that, despite his assertions on pre-employment medical questionnaires, he had several prior back injuries. EBE sought forfeiture of Mr. Babin's workers' compensation benefits under La.R.S. 23:1208.1. The workers' compensation judge agreed with EBE that Mr. Babin had been untruthful in his statements and that EBE suffered prejudice as a result, as they were unable to recover from the Second Injury Fund due to Mr. Babin's misstatements. Accordingly, the workers' compensation judge ruled that Mr. Babin forfeited his rights to compensation. From that decision, Mr. Babin appeals.

On appeal, Mr. Babin asserts four assignments of error: that the workers' compensation judge erred in allowing EBE to file an amended answer; that the workers' compensation judge erred in finding that his statements on a pre-employment medical questionnaire were unambiguous; that the workers' compensation judge erred in finding prejudice against EBE without proof that his

employment was hindered by a pre-existing permanent partial disability (PPD); and, that the workers' compensation judge erred in finding the accident was in the scope of his normal job duties.

Mr. Babin first claims the workers' compensation judge erred in allowing EBE to file an amended answer including the present La.R.S. 1208.1 claim. We disagree. It is clear that La.Code Civ.P. art. 1005 requires that a fraud claim pursuant to La.R.S. 23:1208.1 must be specifically pled in the answer. However, as noted in *Roussell v. St. Tammany Parish School Bd.*, 04-2622, pp. 8-9 (La.App. 1 Cir. 8/23/06), 943 So.2d 449, 456-57, *untimely writ not considered*, 06-2362 (La. 1/8/07), 948 So.2d 116 (alteration in original):

> Historically, pursuant to LSA-R.S. 23:1315, the judge in a workers' compensation case had discretion to allow amendments of the petition and answer at any stage of the proceedings. See *Wade v. Calcasieu Paper Co., Inc.*, 95 So.2d 725, 727 (La.App. 1st Cir.1957). Before its amendment by 1983 La. Acts, 1st Ex.Sess., No. 1, § 1, LSA-R.S. 23:1315 read:
>
> > The petition shall be filed with the clerk of court and the judge shall fix by order a time and place for the hearing thereof, not less than three weeks after the date of service of the petition. A copy of the petition and of the order shall be served as a summons in a civil action upon the adverse party within four days after the filing of the petition.
> >
> > Within ten days after the service of the petition the adverse party shall answer the same and shall admit or deny the substantial averments thereof and shall state the contention of the defendant with reference to the matter in dispute as disclosed by the petition. The answer shall be verified in like manner as required for a petition. The court **may in its discretion** grant further time for filing the answer or hearing the petition **and allow amendments of the petition and answer at any stage of the proceedings**. [Emphasis added].
>
> Act 1 of 1983 eliminated the language relating to the amendments of the petition and answer. Section 1315 was repealed in its entirety by 1988 La. Acts, No. 938, § 3, effective January 1, 1990. Currently, the time for the hearing, service of the petition, and filing of an answer are

2

governed by LSA-R.S. 23:1310.3, which has no reference to amendment of the petition or answer.

The WCJ is not bound by the technical rules of procedure, other than as provided in the workers' compensation law. LSA-R.S. 23:1317(A). Because the worker's compensation law no longer addresses the timing or procedure for amendments to pleadings, we conclude that the decision as to whether to allow the filing of an amended answer under these circumstances was a matter within the WCJ's discretion.

In this matter, the deadline for filing amendments to pleadings was January 5, 2009. EBE filed its amended answer on December 12, 2008, well before the deadline set for amendments. We can find no abuse of the workers' compensation judge's discretion in allowing EBE to amend its answer.[1] Therefore, this claim is without merit.

Next, Mr. Babin claims the workers' compensation judge erred in finding statements on his pre-employment medical questionnaire unambiguous. Louisiana Revised Statutes 23:1208.1 (emphasis ours) provides:

Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; *failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund*. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

---

[1]Mr. Babin argues that our ruling in *Messina v. Isle of Capri Casino*, 04-1061 (La.App. 3 Cir. 12/22/04), 891 So.2d 780, *writ denied*, 05-535 (La. 4/29/05), 901 So.2d 1071, dictates that because EBE did not assert its 1208 claim in its initial answer, it can no longer assert that claim. This case is clearly distinguishable from *Messina* in that the defendant therein failed to amend its answer to include the defense and made no mention that fraud would be asserted until the claim was raised in the employer's pre-trial statement one week before trial. In this matter, EBE timely filed an amended answer so as to be in compliance with La.Code Civ.P. art. 1005. Mr. Babin's reading of *Messina* is incorrect as it applies to this case.

3

"[A]mbiguous answers cannot satisfy an employer's burden of proving knowledge regarding the presence of a PPD. Absent an employer's attempt to clarify ambiguous answers, an employer fails to prove that claimant has knowingly made an untruthful answer for which forfeiture is justified." *Wise v. J.E. Merit Constructors, Inc.*, 97-684, p. 15 (La. 1/21/98), 707 So.2d 1214, 1222. However, our jurisprudence indicates that an employee "fails to answer truthfully when he clearly indicates 'no' on the employer's questionnaire, denying the existence of a known medical condition." *Alexis v. Alton Ochsner Found. Hosp.*, 03-1775, p. 4 (La.App. 4 Cir. 2/25/03), 869 So.2d 121, 124.

In this case, Mr. Babin marked "No" on his pre-employment medical questionnaire when asked if he had current or prior back injuries or problems. He also clearly denied any residual impairment or restrictions or that any doctor had ever restricted his activity. He again denied ever having back trouble or disc injuries on a separate questionnaire at the time of his employment physical. However, he claims that his answers were ambiguous because, on the first questionnaire, he also stated that he once missed four months of work with a "strained back."

The record before us shows four serious prior back injuries. Mr. Babin's medical records indicate that prior to his employment with EBE, he had two herniated lumbar discs at L4-5 and L5-S1 and had been recommended for surgery on more than one occasion. Despite his assertions otherwise, Mr. Babin had been assigned a twenty-percent total body impairment by Dr. Louis Blanda in 1991, and had been restricted from heavy labor by Dr. Blanda, who testified that he never released Mr. Babin to return to heavy labor. At one point, Mr. Babin received workers' compensation benefits for one of the prior back injuries for twenty-one months. He admitted at trial that injury forced him to miss work for that same twenty-one months,

though he could not explain why he claimed on his questionnaire that he had missed only four months of work due to his "strained back." Thus, even the statements Mr. Babin alleges are ambiguous are patently false. The record is clear that Mr. Babin was aware of these injuries, and we find it impossible to believe that he thought they amounted only to a mere back strain.

A workers' compensation judge's factual findings relating to a forfeiture claim are subject to the manifest error/clearly wrong standard of review. *Chaisson v. Philip Servs. Corp.*, 05-340 (La.App. 3 Cir. 11/2/05), 917 So.2d 514. Based on the record before us, we can find no manifest error in the finding that Mr. Babin's statements were untruthful and unambiguous.

Mr. Babin next claims that the workers' compensation judge erred in finding EBE had proved prejudice because it failed to prove his PPD hindered employment. The workers' compensation judge found that EBE was prejudiced because Mr. Babin's untruthful statements affected its ability to receive reimbursement from the Second Injury Fund. In *Nabors Drilling USA v. Davis*, 03-136, pp. 5-9 (La. 10/21/03), 857 So.2d 407, 414-16 (alterations in original, footnotes omitted), the supreme court explained:

> Forfeiture is a harsh remedy; therefore, statutory forfeiture provisions such as LSA-R.S. 23:1208.1 must be strictly construed. *Wise v. J.E. Merit Constructors, Inc.*, 97-0684 (La.1/21/98), 707 So.2d 1214, 1218. By its express terms, LSA-R.S. 23:1208.1 provides for forfeiture under three circumstances. There must be (1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute. *Id.*, *citing Resweber v. Haroil Const. Co.*, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7. The employer has the burden of proving each of the elements required by the statute. *Wise*, 707 So.2d at 1218. The lack of any one of the elements is fatal to the employer's avoidance of liability under the statute. *Id*.

> As we noted in *Wise*, 707 So.2d at 1219, untruthful answers alone do not result in the forfeiture of benefits under LSA-R.S. 23:1208.1. The employer must also prove that it provided the employee with notice comporting with the dictates of the statute. Notice is not an issue in this

5

case.

In addition to the notice requirement, the legislature has decided to specifically impose a requirement that the untruthful statement concerning a prior injury will result in forfeiture of benefits only when the false statement causes prejudice to the employer. Louisiana Revised Statute 23:1208.1 states: forfeiture only occurs "provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund." *See Resweber*, 660 So.2d at 16. This proviso strikes a careful balance. It reflects the legislature's recognition of the harshness of the forfeiture penalty and attempts to ameliorate the harshness of that penalty for the individual who is simply in the position of trying to obtain or maintain gainful employment, while at the same time preserving the goal of the second injury fund, which is to enhance employment opportunities for those who have been previously disabled. Thus, it is not every untruthful statement on a medical history questionnaire that will result in the forfeiture of workers' compensation benefits for a subsequent work-related injury. It is only those statements that rise to the level of meeting the statutory proviso of LSA-R.S. 23:1208.1 that will subject the employee to forfeiture.

The "prejudice" that must be incurred by the employer for forfeiture to apply is specifically defined by the statute. The untruthful statement must "directly relate[ ] to the medical condition for which a claim for benefits is made," or it must "affect[ ] the employer's ability to receive reimbursement from the second injury fund." LSA-R.S. 23:1208.1. . . .

It is the second prong of the "prejudice to the employer" test that is at issue in this case. This second prong requires that the employee's answer to the employer's medical history questionnaire "affect[ ] the employer's ability to receive reimbursement from the second injury fund." LSA-R.S. 23:1208.1.

To determine the effect on the employer's right to collect from the second injury fund, we must evaluate LSA-R.S. 23:1378(A) which provides that an employer shall be reimbursed from the second injury fund when the employer "knowingly employs or knowingly retains in his employment an employee who has a permanent partial disability," as defined by the statute. However, reimbursement is limited to those situations where the permanent partial disability "merges" with a subsequent injury "to cause a greater disability than would have resulted from the subsequent injury alone." LSA-R.S. 23:1371(A).

As we explained in *Wise*, *supra*, an employer's right to reimbursement is not automatic. The employer is not entitled to reimbursement from the second injury fund merely because an employee with a pre-existing disability is subsequently injured. The employer has

6

the burden of proving each element entitling him to reimbursement. *Wise*, 707 So.2d at 1220, *citing Commercial Union Insurance Co. v. Workers' Compensation Second Injury Board*, 94-1202 (La.App. 3 Cir. 3/1/95), 651 So.2d 933. Thus, to be reimbursed from the second injury fund, an employer must prove three elements. *Id.* First, the employer must prove that the employee had a permanent partial disability satisfying the requirements of LSA-R.S. 23:1378(F), *i.e.* that the employee's preexisting condition is of "such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed." Second, the employer must prove that he had actual knowledge of the employee's permanent partial disability before the occurrence of the injury forming the basis of the compensation claim. LSA-R.S. 23:1378(A)(4); *Chandler Parts and Service, Inc. v. Louisiana Worker's Compensation Second Injury Board*, 576 So.2d 1133 (La.App. 3 Cir.), *writ denied*, 580 So.2d 383 (La.1991). Finally, the employer must prove that the permanent partial disability merged with the injury to produce a greater disability. LSA-R.S. 23:1371(A); LSA-R.S. 23:1378(A); *Wise*, 707 So.2d at 1220.

Mr. Babin does not challenge the workers' compensation judge's finding that the pre-employment injuries merged with the current injury or that EBE's claims to the Second Injury Fund were destroyed because he prevented it from obtaining the required knowledge. He merely challenges the finding that he suffered from a disability that hindered employment, making the blanket assertion that the fact that he has worked as an electrician proves he is unhindered. We disagree.

"To aid the employer's collection of reimbursement from the second injury fund, our legislature established 'a presumption that the employer considered the condition to be permanent and to be or likely to be a hindrance or obstacle to employment' where the condition was one of the thirty listed in the statute. La.R.S. 23:1378(F)." *Trent v. Triad Elec. & Controls, Inc.*, 09-1192, p. 11 (La.App. 3 Cir. 4/7/10), 34 So.3d 484, 492-93. One of the conditions listed by La.R.S. 23:1378(F) is a ruptured intervertebral disc.[2] Moreover, even if this presumption of disability

---

[2]Disc herniations such as Mr. Babin's have been discussed in jurisprudence in a manner interchangeable with the ruptured discs listed in La.R.S. 23:1378(F)(26). *See Trent*, 34 So.3d 484.

7

were not available, Dr. Blanda testified that his previous disc herniations made him prone to re-injury and would make the effects of any subsequent injury worse. Most damningly, he also testified that Mr. Babin's prior spinal condition was permanent and that it would be a hindrance to employment, preventing him from any heavy work. This testimony is uncontradicted. In fact, Mr. Babin advanced this point himself when he testified that he sought only jobs that would not affect his back injury and actively avoided jobs that involved heavy manual labor. The fact that Mr. Babin could perform his job as an electrician in a relatively unhindered manner has no bearing on the fact that he has still not been released to any kind of heavy labor by Dr. Blanda and that he simply can not perform that type of work according to his own physician. We can find no error in the workers' compensation judge's finding that Mr. Babin had a PPD prior to his hiring by EBE that hindered his employability.

Finally, Mr. Babin claims that the trial court erred in applying La.R.S. 23:1208.1 where the injury in question was outside the scope of his normal job duties. We find this argument uncompelling, if not completely disingenuous. Part of Mr. Babin's job as an electrician was to perform work in buckets. While the mechanism of injury in this case was unusual, *i.e.* the mechanical malfunction, Mr. Babin cannot realistically claim he was not performing his regular job duties when this injury occurred. Moreover, Mr. Babin himself stipulated that he was in the course and scope of his employment when the accident occurred. This assignment of error has no merit whatsoever.

For the above reasons, the decision of the workers' compensation judge is hereby affirmed. Costs of this appeal are hereby assessed against Ronald Babin.

**AFFIRMED.**

8